## LIVINGSTON v. DORGENOIS.

1813

Feb.  18th.

*Absent....*LIVINGSTON, *J. and* TODD, *J.*

THIS was a *writ of error* to the District Court of the United States for the District of Orleans, in a suit brought in that Court, by Edward Livingston against F. I. Le Breton Dorgenois marshal of the territory of Orleans, according to the forms of the civil law as established in that territory.

A writ of error does not lie to an order of the Court below to stay the proceedings finally upon suggestion of the attorney for the United States, in a case to which the United States are not parties—but the Court will award a mandamus nisi, in the nature of a procedendo.

The petition of E. Livingston stated, that one John Gravier, on the 30th of April, 1803, was an inhabitant of the province of Louisiana; that he was the owner and possessor of a plantation or parcel of land adjoining, and next above the city of New Orleans, and bounded in front on the river Mississippi, which had been uninterruptedly owned and possessed by himself, and those under whom he claimed, for upwards of eighty years. That the said plantation or parcel of land had then, to wit, on the said 30th day of April, and long before, been greatly increased by the alluvion of the said river, which had always, from the several periods of its increase, been considered, possessed, and lawfully held, as parcel of the said tract of land, by the said Gravier and those under whom he held.

That the mayor, aldermen, and inhabitants of the city of New Orleans having, under some pretence of title to the said alluvion, or to a servitude therein, committed divers trespasses on the said land, the said John Gravier filed his petition in the Superior Court of the territory of Orleans, being a Court of competent jurisdiction, and from whose judgment there is no appeal, praying for an injunction against the said trespasses, and that he might be quieted in the possession of the said land. And that such proceedings were had, in the said Court, on the said petition, that it was finally adjudged and decreed, that the said John Gravier should be quieted in his lawful enjoyment of the said alluvion, and that an injunction, before granted, should be made perpetual, which judgment was carried into execution. Aft r which, the petitioner (Livingston) took possession,

LIVINGS- under Gravier, of the property in question, which he
TON held as the legal owner in fee, by virtue of sundry con-
v. veyances from Gravier, and others who legally held
DORGE- under him; and that the possession of Gravier, in which
NOIS. he was quieted by the said decree, was legally and un-
interruptedly transmitted to the petitioner, Livingston,
and that he held the same until the 25th of January,
1808, when he was forcibly dispossessed by the De-
fendant, the marshal of the district of Orleans, who
still retains the possession thereof, contrary to law.

The petitioner then prays that, in the first instance,
without prejudice to his further claims, he may be re-
stored to the possession of which he has been illegally
deprived, and may have such further and other relief
as the nature of his case may require.

To this petition the Defendant answered, and plead-
ed in bar, that before and on the 25th of January, 1808,
he was marshal of the district of Orleans, and in his
official capacity received from the president of the Unit-
ed States, an instruction or mandate, to remove from
the lands in question, all such persons as should be
found thereon, and who should have taken possession
thereof, or settled thereon since the 3d of March, 1807,
which instruction or mandate was communicated to the
Defendant officially, by the direction of the President of
the United States, in a letter written by James Madi-
son, then secretary of state, which letter is in the
words and figures following, viz.

" *Department of State, Nov.* 30, 1807.
" SIR,

" In pursuance of the provisions of the act of Con-
gress, " to prevent settlements on lands ceded to the
" United States, until authorized by law," I am di-
rected by the president to instruct you to remove imme-
diately from the land known and called by the name of
the Batture, in front of the suburb St. Mary, of the
city of New Orleans, which was ceded to the United
States by the treaty with France, and the settlement of
which has not been authorized by any law of the Unit-
ed States, all persons who shall be found on the same,
and who shall have taken possession or settled thereon

since the 3d day of March, in the year 1807. Should any aid be necessary you will call for the assistance of the good citizens of the district, as the *posse comitatus*, or civil power of the territory.

LIVINGS-<br>TON<br>*v.*<br>DORGE-<br>NOIS.

I have the honour to be,

Very respectfully, sir,

Your obedient servant,

JAMES MADISON.

" *Francis Joseph Le Breton Dorgenois,* *Esq.*
  *marshal of the Orleans territory.*"

And that the Defendant did accordingly, on the said 25th day of January, as marshal as aforesaid, and in obedience to the said instruction or mandate of the president, remove the Plaintiff and his servants from the lands aforesaid, the same having been taken possession of by the Plaintiff since the 3d of March, 1807, which said removal is the same, which the Plaintiff has set forth in his petition, and this he is ready to verify, &c.

To this plea there was a general demurrer and joinder; but upon the day assigned for the argument, " Tully Robinson, esq. attorney for the United States, " moved the Court that the proceedings be stayed, upon " a suggestion that the suit is fictitious and collusive; " that the Defendant is entirely uninterested in the " cause, not having (though impliedly admitting by the " pleadings that he has) any right of property or pos- " session in the tract or parcel of land called the Bat- " ture, but that the said suit is carried on for the sole " purpose of affecting the interest of a third party, to " wit, of the United States, and of obtaining the pos- " session from them." Whereupon sundry documents were filed in support of the suggestion, and against it; and the Plaintiff offered to consent that the United States should *intervene* in the cause, but the counsel with the attorney for the United States replied that the offer could not be accepted, because the United States could not be made Defendants in any case. The motion of the attorney for the United States was thereupon

LIVINGS-
TON
*v.*
DORGE-
NOIS,

argued, and the Court having taken time to consider, and having also granted a re-hearing, ultimately decreed that the proceedings should be " *finally stayed ;*" whereupon the Plaintiff sued out his writ of error to the Supreme Court of the United States.

P. B. KEY, *for the Plaintiff in error*, contended,

1. That the suggestion of the district attorney ought not to have been received to stay the proceedings.

2. That the rights of the United States (if they had any) could not have been injured by a decision in this case.

3. That to protect the interest of the United States, they had a clear adequate remedy by *intervention*, as known and used in the civil law.

1. A proceeding so novel and extraordinary, and so pregnant with mischievous consequences, ought to be supported by clear law, or decided usage and practice.

If proceedings are to be stayed at the mere suggestion of interest in the United States, it will be in the power of the district attorney, at any time, to stay proceedings in any cause by such a suggestion.

There is neither statute law nor practice to justify such a proceeding, nor can it be sustained by analogy to those cases in which Courts of law have sometimes stay the proceedings at the suggestion of a third party. There is no case in which they have been stayed upon the mere allegation of the *interest* of such party, or upon the mere suggestion of collusion.

It is only in cases where the testimony leads to indecency, and is *contra bonos mores ;* or where the peace of families, and the happiness and reputation of individuals are put to hazard by actions founded upon wagers made by indifferent persons, and where the injured party would be *without remedy;* that the Court will interfere to stay proceedings, as in the case of *Da Costa v. Jones, Cowp,* 729, and *Cox v. Phillips. Ca. Temp. Hardw.* 237.

Here it is a mere suggestion of *property* in the United LIVINGS-
States, who, if they have any right, *have a remedy.*   TON
That right, if any, cannot be affected by this suit.       *v.*

DORGE-

2. The question before the Court upon the demurrer    NOIS.
is, was the Defendant justified in removing the Plaintiff
from his possession? If he was not, the Plaintiff is en-
titled to restoration to his possession with damages, but
the right of the United States is not affected. If the
Defendant was justified, then there is an end of the
Plaintiff's case. The judgment in this case cannot be
given in evidence against the United States. It is *res
inter alios acta.*

If this " *suggestion*" prevails, the Plaintiff is ruin-
ed, because the United States are not suable, and he has
no redress, however illegal the conduct of the officer who
removed him.

Whenever the United States have a right, they must
prosecute for the recovery of it. There is no obstacle
in the way. It is every days practice. In a case of
trover for a ship between individuals, the United States
would not be permitted to stay proceedings upon a sug-
gestion that the suit was collusive—that neither of the
parties had possession or property in the ship, but that
she was forfeited to the United States.

3. But the United States had a clear adequate remedy
to protect their rights by *intervention,* as known and
used in the civil law. In 2 *Domat* 676, the proceeding
by intervention is defined. The petition of intervention
ought to set out the interest of the party, with his
proofs; the parties litigant are called upon to answer;
and the party intervening is considered as Plaintiff.
This is what the Plaintiff offered to permit the United
States to do, but they refused, " *because the United
States could not be made Defendant;*" whereas the pro-
cess of intervention would have made them Plaintiff.
But the reason is obvious; intervention would have
obliged them to shew and establish their title; which
they could not do, and therefore they resorted to this
extraordinary mode of *suggestion* for the purpose of
avoiding a judicial investigation of their right.

The consequences of such a proceeding, if support-
ed, are too serious and glaring not to be perceived by
the Court.

PINKNEY, *Attorney General*,

Stated that he did not appear for the United States, nor
for Dorgenois. The writ of error is not against Dorgenois,
but against the United States. Yet no citation had been
served on the United States or their attorney. He appeared
as *amicus curiœ*, and objected to the Court's hearing *ex
parte* affidavits to prove the value of the matter in dispute
to be more than 2,000 dollars ; but *the Court over-ruled his
objection, and heard the affidavits.*

On a subsequent day, he stated that he should confine
his argument to two questions.

1. Has this Court any jurisdiction of the cause? Is
it before them ? and

2d. How shall it be disposed of?

1. The cause is not before this Court.   The writ of
error has issued improvidently.    There is no authority
nor precedent for a writ of error in such a proceeding.
It is not a judgment ; and a writ of error at common
law, as well as by statute, lies only to a final judgment.
This was not a final judgment ; for the complaint is,
that the Court below *refused* to pronounce a final judg-
ment.   This proceeding is not between the parties to
the suit.   It was equally adverse to Dorgenois as to Li-
vingston.   It is not defended by Dorgenois.   He oppos-
ed the motion, and had as good a right to do so as Li-
vingston.   He had a right to go on and get judgment
for his costs, if the law was on his side.   If the motion
of the district attorney had failed, Dorgenois could not
have had a writ of error.   Nor could the United States.
No person who is not a party or privy can have a writ
of error.   If it be a right, it ought to be reciprocal.
There are no authorities directly in point, because the
case must be rare ; but in analogous cases no writ of
error lies.   The prayer for the benefit of clergy, which
intervenes and prevents the attainder, produces a final

stay of the proceedings; yet no writ of error lies, because it was no judgment. The only remedy is a *certiorari* to bring the case into the crown office. *Cro. El.* 489. *Long's case.* 9 *Viner,* 476, *pl.* 2. *id.* 480, *pl.* 13. So in the case of *recusancy,* where the conviction is by *proclamation,* error will not lie, because there was no judgment. So in the case of *prohibition,* error will not lie for refusing a prohibition, consequently it will not lie on the granting it. There is a strong analogy between that case and the present, which is in the nature of a prohibition. 1 *Salk.* 236. So the refusal to grant a new trial, or to continue a cause, &c. are not the ground of a writ of error. 1 *Henning,* 222. 4 *Cranch,* 324. 2 *Binney,* 80, 93. 6 *East,* 633.

2. But if this Court is in possession of the cause, and if the merits of the case are against the Plaintiff, the Court can have no motive to interfere, or to reverse the proceedings.

The Plaintiff never could be entitled to recover. He brought his action 18 months after the cause of action accrued; and the general rule of the civil law is, that it must be prosecuted within one year if the sole ground of action be the *unlawful force.* There is only one exception, which is where the Defendant continues in the possession thus unlawfully and forcibly acquired. If the force be removed within the year, the action must be brought within the year. The action in the civil law is called *Interdictum unde vi. L.* 1. *ff. d. tit. de vi et vi armata.* 2 *Pothier,* 103. *Of possession and prescription, c.* 6, § 2 & 5. 7 *Pothier's posthumous works,* 258, 259, *c.* 13, *art.* 3.

The Plaintiff's own case shows, that the force was more than a year before his suit, and was discontinued within the year. The Defendant was not in possession when the suit was brought. But it is said that the limitation ought to have been pleaded, by analogy to the common law. At common law it was first decided, that if it appeared by the Plaintiff's declaration, that his claim was within the statute of limitations, it need not be pleaded.

Afterwards it was held necessary to plead it, that the

Plaintiff might have notice, and reply the exceptions. But in the civil law there are no exceptions. It is not necessary to plead the limitation. If Dorgenois did not take advantage of the limitation in his favor, it is evidence of collusion.

But without insisting on this defence, the justification set up by the Defendant is sufficient. This Court will look into it to support the proceedings, but not to reverse them.

The plea sets up the act of Congress, and the order of the president. Every government causes its rights to be protected in the same way. In every republic we find the same. It was so in Rome, Sparta, Athens, &c. The act of congress was indispensible. Its sole object was to guard against intrusions—to preserve the *status quo.* The president is to exercise a judicial power in deciding whether it be a case in which he was to execute the law. Wherever he was of opinion that the lands had been ceded to the United States, and that the settlement thereof had not been authorized by any law of the United States, and that a person had settled thereon since the 3d of March, 1807, it was his duty to execute the law. The instructions to the marshal stated, that the lands had been ceded to the United States, and that the settlement thereof had not been authorized by any law of the United States, but did not state the fact that there had been an intrusion into those lands since the 3d of March, 1807. The president might have had an inquest to ascertain that fact, but he was not bound to do so. He left that fact to be decided by the marshal, who found that there had been such an intrusion. If the president had jurisdiction to issue the warrant, the marshal was justified in obeying it, whether the president decided right or wrong. If on the face of the warrant the jurisdiction be asserted, although *falsely* asserted, he is bound to obey. He cannot say that the president has over-stepped his authority. The contrary doctrine would make the inferior the appellate tribunal. He is only to look to his precept. He could not inquire whether the United States had title or not. The president could not execute the law personally. He must act by inferior agents. An

office; who has an execution, on the face of which all
appears right, is justified.

But another ground of objection to the justification
is, that the warrant does not state that the intrusion
was since the act. The president had a right to in-
quire, or to substitute an agent to make the inquiry.
But the justification states the fact, that the lands were
ceded to the United States, and that the Plaintiff had
intruded since the act. If the marshal were not com-
petent to ascertain that fact, yet it appears from the
other proceedings. If Gravier's possession be Livings-
ton's possession, then the fact is stated, that Gravier's
possession was since the act.

It is immaterial whether the United States had title
or not. If the president had authority to decide, his
decision is conclusive as to the officer. It differs from
a common case where a man cannot delegate an autho-
rity further than he has title. Independent of the ques-
tion of title, the act of congress has given the presi-
dent a judicial authority to ascertain facts, and to issue
his warrant thereon.

Another objection to the Plaintiff's claim is, that the
United States are not suable. The judgment would
have been nominally against the marshal, but would
have affected the title of the United States. The exe-
cution, upon the judgment in an action of *interdictum
unde vi*, is conclusive as to the possession. If the agents
of government may be sued, all its rights may be sub-
jected to judicial cognizance. The non-suability of go-
vernment prevents the judicial decision directly on the
*property* or *rights* of the government so as to affect per-
manently the interests of the United States. A con-
trary doctrine would be inconsistent with sovereignty.
There are cases of forfeiture, &c. where the United
States are Plaintiffs, and there may be cases in which
they may authorize suits to be brought against them-
selves.

It is immaterial whether the United States show their
title or not. It is sufficient if it be set up; or if that
question be necessarily in contest. That the right of
the United States was in contest appears from the pre-
VOL. VII.

LIVINGS-
TON
*v.*
DORGE-
NOIS.

sident's message to congress, communicating his proceedings relative to the batture, which the Plaintiff has produced in evidence.

The case has been thus far considered, on the supposition that the plea of justification by the marshal is a good defence in law. But if it be an imperfect defence, will this Court send the cause back to be risked by such a defence, or to be abandoned or betrayed? It is clear that the United States claim title, and this Court will take care of the interest of the United States.

It is said that the Plaintiff was willing that the United States should *intervene*. But who has authority to intervene. and submit the rights of the United States to judicial investigation? The president had no such right. But if they were to intervene, it must be as auxiliary either to the Plaintiff or the Defendant. The judge was therefore driven to stay the proceedings. He could not compel the Defendant to amend his defence. The government could not intervene as an individual may. It cannot submit its rights as Defendant. Probably the imperial code provided for the protection of the imperial rights. By analogy the United States ought to have the same privilege. If the defence be not good, there is no remedy for the United States but to stay the proceedings.

Every Court has such a discretion to stay proceedings when the feelings, &c. of third persons, are injured; a *fortiori* where the interests of the United States are concerned, even in cases where there is no collusion. But where there is collusion, the right is unquestionable.

If this Court should reverse the decision of the judge, it can only send the case back with directions to proceed in the cause.

HARPER, *in reply*, observed,

That he should be alarmed for himself and for his fellow citizens of the United States, if it could be supposed necessary to reply to many of the positions advanced by the attorney general. They find their refutation,

not only in the universal understanding of the country, but in the heart of every person who hears them.

This case has no analogy to that of Cox, where the suit was only a pretext to intermeddle with the domestic concerns of third persons, and to harrow up their feelings.

The government of the United States has no greater right to stay the proceedings in a suit between third persons, than any other individual; and no individual can stay the proceedings in such cases upon the mere suggestion of interest or collusion, without becoming a party to the suit. It is true that the United States cannot be brought into Court as Defendant in all cases; but shall it therefore come when it pleases, and interfere in private concerns? It is sufficient that it can seize what it pleases, and hold what it seizes, without being compellable to account. But it is the only *civilized* government that refuses to submit its rights to judicial decision.

The question of collusion, being a question of fact only, he rested upon the argument of the Appellant as contained in his printed statement of the case.

The action *interdictum unde vi*, is a possessory action only; and the only question is the *forcible entry*, and its legality. The title does not come in question. The only question is concerning the *force* and the damages. It was the only action he could have brought. If there had been a question of title, he might have had the *actio utilis* with his possessory action. If the United States had an interest, it ought to have been shewn. In the case of the direct taxes, president WASHINGTON did not think that the dignity of the United States forbade a judicial investigation. He directed a case to be made and argued at the expense of the United States.

But the defence of the Appellee is wholly untenable. It is no justification. The warrant of the president is not authorized by the act of congress, (*March 3d*, 1807, *vol.* 8, *p.* 317.) The party to be ousted under the authority of that law must be one who had *taken* possession since the 3d of March, 1807. It does not apply to

LIVINGS-
TON,
*v.*
DORGE-
NOIS.

LIVINGS-  one who had *received* peaceable possession from one who
TON    was in peaceable possession before and on that day. Its
*v.*    object was to prevent *intrusion* by strangers into the
DORGE-  *vacant* lands ceded by the treaty. It means an original
NOIS.   *taking*, not receiving a *derivative* possession. It must
────    appear also that these lands were *ceded*. But they were
*not ceded*. The cession was only of *vacant* lands. But
the estate to which this *alluvion* had accrued, was in
possession of Gravier at the time of the treaty, and
had been in his possession, and in that of those under
whom he claimed. for more than 80 years. The allu-
vion had been judicially decided to be the private pro-
perty of Gravier by a competent tribunal, whose deci-
sion was conclusive.

But there is another fatal objection to the defence,
which is, that the act of 1807 did not apply to any
claims under French or Spanish grants. until the board
of commissioners appointed by virtue of the act of con-
gress of 1805, *vol.* 7, *p.* 291, 295. § 4, should have re-
jected them, or until they should be rejected by the se-
cretary of the treasury, or by congress, to whom there
was a right of appeal. The report of this board of
commissioners was not made until January, 1812, and
was not transmitted to congress by the secretary of the
treasury until November, 1812, long subsequent to the
forcible removal of the Appellant.

The defence ought to have averred that this claim
had been submitted to the board of commissioners and
rejected, &c.

It is said that the action *interdictum unde vi* is an an-
*mual* action. But it is also stated in the books, that if
the spoliator remain in possession, it may be brought
at any time. The Plaintiff states the Defendant to be
in possession, and the fact is admitted by the Defen-
dant. But it is said the truth of the fact is not so.
Yet it appears that the Defendant took possession by
force, and kept the Plaintiff out, and has not delivered
the possession to any body else. The United States
disclaimed possession. The possession, therefore, is to.
be presumed to remain with the Defendant.

It is objected that a writ of error does not lie in such

a case. It may be admitted that at common law this is not such a judgment as will support a writ of error. But in the civil law, •in equity, in admiralty and ecclesiastical cases, every decree or sentence of dismissal may be appealed from. But it is said not to be a final sentence, because the Court below may rescind it at any time. A decree that a judgment shall be finally staid is a final decree, as much as a decree dismissing the bill.

It is also objected, that if the cause be sent back, the United States cannot have a hearing. But the United States may *intervene*, which is a process analogous to a bill of interpleader. It is not true that they cannot intervene but as auxiliary to the Plaintiff or Defendant. This is shewn by Pothier, cited by the attorney general. He speaks throughout of the *right* of the third person who intervenes. But if the United States cannot intervene without joining one or the other party, why not join the Defendant who claims under the United States? If his defence is imperfect, why not help him? If collusive, why not make a better?

Even under the Roman civil law, the EMPEROR himself cannot by rescript affect the property of a person who has not been heard. *Code, tit.* 4. *Corp. Jur. civ. vol. 2, p.* 258.

*March 16th....* The counsel for the Appellant dismissed his writ of error, and prayed a *mandamus nisi* to the judge of the District Court of Orleans in the nature of a *procedendo,* which *was granted.*

*Mandamus nisi* awarded.

LIVINGS-
TON
*v.* .
DORGE-
NOIS.

---

## OTIS *v.* BACON.

1813.

March 12th.

*Absent....*TODD, *J.*

ERROR to the Supreme Judicial Court of the state of Massachusetts, in a case involving the construc-

By the 11th section of the